Case 13-3712 Central Ohio Coal Company v. DOWCP et al. Oral argument, 15 minutes for the petitioner, 15 minutes to be shared by the respondents. Mr. Mattingly for the petitioner. May it please the court, my name is Bill Mattingly and I'm here on behalf of Central Ohio Coal Company. I've asked to reserve three minutes for rebuttal, please. Very well. We present a black lung benefits claim to this court for review. The standard of review is very deferential to the administrative law judge's decision. You have to understand what the administrative law judge did and why he did it, and his decision has to be supported by substantial evidence in the record. His findings of pneumoconiosis and disability causation are not supported by substantial evidence in the record, and he's misapplied the presumption of substantially similar circumstances for underground as opposed to below ground mining. First, with regard to the medical evidence, ALJ Merck has divided the evidence between clinical and legal pneumoconiosis. There's a misunderstanding in his decision. Clinical pneumoconiosis is defined by the regulations as particulate matter that shows up in the lungs. It is diagnosed by physicians by chest x-rays and by biopsy or autopsy evidence, and I would ask that the other parties be asked if that is not the way clinical pneumoconiosis is diagnosed. There's no differentiation with regard to that in the general practice in this area. ALJ Merck makes a huge distinction finding that he can't rely on doctors' opinions as to the existence of pneumoconiosis when they rely on an x-ray to diagnose clinical pneumoconiosis. Now, turning to the way he looked at the x-rays, he broke them down by the different x-rays. One from 2006 he found equivocal. One from 2007 he said showed pneumoconiosis. One from 2011 did not show pneumoconiosis. He would not look at the treatment record x-rays. He said they weren't taken for the purpose of diagnosing pneumoconiosis. That finding is not supported by this record. Those x-rays were taken and interpreted by Dr. Diaz at Ohio State University. In his deposition, Dr. Diaz explained in Joint Appendix 371 as well as 383 that the x-rays showed no opacities consistent with pneumoconiosis, and this gentleman showed no interstitial lung disease. When I presented this case to A.L.J. Merck, I felt confident that the x-ray evidence could not be found to support a finding of clinical pneumoconiosis. Did A.L.J. find clinical pneumoconiosis and legal or just the legal side? He found both. The clinical pneumoconiosis was found by excluding all these treatment x-rays from Dr. Diaz. Substantial evidence doesn't support that because A.L.J. Merck said he can't determine if the treatment x-rays were taken to diagnose pneumoconiosis. Dr. Diaz explained that they did not show pneumoconiosis. So his finding of clinical pneumoconiosis isn't supported by the record. The case has to go back. The finding of legal pneumoconiosis... A.L.J. is entitled to decide whether to accept or reject evidence. I mean, that's part of what he does. And here he relied on a presumption with respect to clinical pneumoconiosis, right? He relied on the 15-year presumption to find pneumoconiosis existed when he found there was evidence of total disability. Everyone agrees Mr. Sterling had disabling lung disease. So the burden's on me, my client, to show that the pneumoconiosis was not present. In looking at clinical pneumoconiosis, he threw out all the treatment records. Dixie Fuel, a recent decision from this circuit, said you can't do that. You've got to look at all the relevant evidence. He looked at the evidence. He just didn't find it. Finding it rebutted the presumption. It's not that he was unaware of that evidence or anything. He explained why he didn't use it. But his explanation's incorrect. Because what he said is... That's not our standard of review. It is. Whether or not the decision below is based on substantial evidence. We don't review. We look at the overall decision. We determine whether it's supported by substantial evidence. We're not even reviewing his evidentiary decision for abuse of discretion as we do if we were reviewing directly from a district court. It's just a whole... You can't piece me with that way exactly. I disagree with that, Judge. You have to understand what the ALJ did and why he did it. And if the why part is wrong, and here he said, I can't look at the treatment x-rays because they weren't taken to determine the presence or absence of pneumoconiosis, and the treating physician testifies those x-rays showed no pneumoconiosis, the decision's not based on substantial evidence contained in the record. It has to go back. But the bigger problem in this case is when he found that the existence of pneumoconiosis and disability due to pneumoconiosis was presumed by virtue of the presumption, he looked to two opinions to say that they were the most credible, Dr. Diaz and Dr. Forrester. Dr. Diaz's opinion does not establish that pneumoconiosis was a substantially contributing cause. In the recent decision of Big Branch Resources versus Ogle, the court was pretty specific, page 1070, page 1071. The presumptions rebutted when pneumoconiosis does not cause disability or when you can show that coal mine employment played no role in disability. We took Dr. Diaz's deposition. Although he has language in his written reports that suggests pneumoconiosis played a substantial role or coal dust played a substantial role in causing this man's disabling COPD, look, if you would, at Joint Appendix 388. I ask him this question. I ask, would this gentleman be totally disabled had he never smoked cigarettes? His answer was, I doubt it. Herein is the interplay that the ALJ missed. There's a difference between disability and impairment. Years ago, I had a physician explain to me that if two people lose legs, they both have the same impairment. They have one leg. But he looked at me and smiled and said, Mr. Mattingly, if you lose a leg, you may be a better lawyer because you're going to spend more time at your desk. You have no disability, although you have an impairment that you've lost your leg. A ballet dancer has a totally disabling impairment. They can no longer dance. So why does that matter here? Here, Dr. Diaz has explained, this gentleman has pulmonary disease. It is impairing him to the point that he's disabled. You don't dispute that? No, totally agree with that, and my physicians agree with that. Under Section 718.204, the question is, does pneumoconiosis play a substantially contributing role in causing the disability? Dr. Diaz explains in his deposition, he doubts this man would be disabled had he never smoked cigarettes. That doesn't really answer the question, does it? Because didn't he file his report saying he was disabled? He did. Pneumoconiosis. But when we deposed him, he explained how he apportioned the degree of impairment. Although he still thought there was impairment due to coal dust exposure, it wasn't sufficient enough to be causing the disability. This man's disability was caused by his years of cigarette smoking. That's true in so many of these cases, and they're all recovering, even though they have a bad smoking habit. It is. That just goes with the job, it seems like. But you don't have doctors saying, as Dr. Diaz did, I doubt this man would be disabled had he never smoked cigarettes. That establishes the Ogle standard. Pneumoconiosis didn't play a role. That's just a doubt. Is that up to medical certainty? Well, the ALJ didn't tell us what he thought of it. He just ignored that portion of the opinion. He credited Dr. Forrestal, a treating physician, who didn't explain why he thought the COPD was due to coal dust exposure, and throughout years of treatment notes, had diagnosed only asthma, chronic obstructive pulmonary disease, and never said why it was due to one thing or the other. But then the other treating physician, Dr. Branditz, who said the COPD was due to smoking, was discredited because he didn't explain his conclusion. The ALJ didn't require Dr. Forrestal to explain his conclusion, only Dr. Branditz. Dr. Rosenberg's opinion was tossed out. The ALJ cites to a portion of the preamble. He misinterprets the preamble. As this court explained in A&E Coal v. Adams, the preamble has one precept. That precept or principle is coal dust can cause COPD. The ALJ selectively looks at one page of the preamble, pulling out the page that he cites in the decision, but doesn't put in the next sentences. And the next sentences of that part of the preamble talk about only severe decrement in FEV1. It supports what Dr. Rosenberg explains from a scientific standpoint, that in looking at this man's presentation, his disease is too bad, too severe, to have been caused by coal mine dust. You have to look and see what else is going on. This is totally consistent with cigarette smoking. The ALJ failed to factor in then what Dr. Diaz admitted, that you never see this severe COPD due to coal dust exposure alone. That's at Joint Appendix 379. Next page, that you never see diffusion capacities this low with coal dust exposure. 383, this man has no interstitial lung disease from coal dust exposure. And then on 384, the same thing that Dr. Rosenberg said, that the ratio of the FEV1 to FEC is small in magnitude, but it has a significant loss in cigarette smokers, it doesn't in coal miners. Let me switch to the other issue, and that's this man's employment, and whether or not he showed, which is his burden, that it's substantially similar. The law has changed. The director's suggestion that the regulations are just a substantiation of the prior case law, isn't correct. When you look at those prior cases, and they all come from the 7th Circuit, the Midland case, the Blakely v. Amex Coal and Freeman United, they all dealt with people who had awful coal dust exposure. They worked above ground in preparation plants. They talked about being exposed to coal dust. The panels in those circuits, or in those 7th Circuit decisions, emphasized exposure to coal dust. Here, Mr. Sterling never told us at the hearing he was exposed to coal dust. He said because he worked at a strip mine, he was dirty, he was covered with oil and grease. He was exposed to dust, right? He was exposed to dust, but Brandon Phillips is dirty after he plays a game of Great American Ballpark when he's exposed to dust. They don't have a coal mine down there underneath the Great American Ballpark. They don't, and that's the distinction. It's the coal mine dust that causes the disease. It's not the dirt dust. Mr. Sterling didn't go far enough explaining that what he was exposed to was not only dust from the road, but also coal dust. The director's brief uses both words interchangeably, coal dust and coal mine dust. I don't know what the standard should be, but when I tried the case with the 7th Circuit cases being the only ones that were on the table, it was clear that coal dust was the key. The ALJ relies on a doctor's opinion to say, well, he was exposed to coal dust, but Dr. Knight really didn't know. He explained in his deposition he didn't know what this man was exposed to, and it's hearsay that he was guessing. This circuit's decision in Harlan Bell says when the law changes, you've got to remand back, and that's what has to happen here for us to figure out if this man's work was actually substantially similar. The rule of law the directors suggest that... You don't have a 6th Circuit case that requires a remand back for this issue, do you? Sure, Harlan Bell v. Lamar, which is at 904 FedSecond 1042. Why would that require remand, though, under these facts? The new regulations suggest that exposure to coal mine dust may be sufficient to show substantially similar work above ground to below ground. The prior 7th Circuit cases all talked about exposure to coal dust, not coal mine dust. So there's a difference as to whether or not you're including just coal dust and rock dust that you get typically in underground mines, but also overburden and dirt that you'd get in above ground mines. Well, there's no way factually to make that determination. If you start splitting hairs that way, I don't see what a remand would accomplish for that issue at all, as you phrased the issue there. Well, the standard the directors suggest we adopt, regular exposure to dust, is a workable standard. But as Mr. Sterling explained, for about a year when he would work in enclosed cabs, the seals of the cabs worked really well, so he wasn't exposed regularly to dust, be it coal dust or coal mine dust. Well, he didn't say the seals worked really well. Well, he says the seals were intact, and later they were more separated. That's all the record shows. He said they were separated and didn't work as well. I see my time's up, and I've saved some time for rebuttal. Okay. Thank you. Good morning. May it please the Court, my name is Heath Long, and my client is Larry Sterling, who was awarded federal black lung benefits as a living minor. I'll be addressing two of the issues today. One, the administrative law judge's finding regarding the smoking history and the administrative law judge's determination on the sufficiency of the evidence. How are the two of you splitting up your time? Seven and a half, seven and a half. Okay. I apologize. And Attorney Bukowski will be addressing the 15-year above-ground, underground presumption. And this is something that you guys brought up with Attorney Mattingly, and that was in talking about the sufficiency of the evidence, it's important to keep in mind what the standard of review is here, because in cases from the agencies, it's a little bit different. In determining whether the administrative law judge's decision was fully supported by the record, the circuit courts have held that in black lung cases, our review of the Board's order is limited. We review the decision to assess whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the Board and the ALJ are rational and consistent with applicable law. As in all agency cases, we must be careful not to substitute our judgment for that of the ALJ. Ultimately, it is the duty of the administrative law judge reviewing a case and not the responsibility of the courts to make findings of fact and to resolve conflicts in the evidence. Is it a substantial evidence criterion? Yes. That's what we're talking about. Yes. And, in fact, this Court has held... If there's substantial evidence to support the decision of the ALJ, then it has to be upheld. That's correct. That's correct, Your Honor. Well, your opponent says that the ALJ didn't consider Dr. Diaz's deposition when he said, I doubt it. Tell us about that. Sure. The administrative law judge actually never even needed to get to... Because the presumption was invoked, the burden shifts. The presumption was invoked because all doctors agreed that this man had a disabling respiratory impairment and because he had the 15-year presumption, that automatically shifted the burden over. So if one of the doctors, either Dr. Grodner or Dr. Rosenberg, who the employer relied upon, if any of their opinions had stood, then the judge would have had to have weighed both the doctors on Mr. Sterling's side as well as the doctors on the employer's side. But he never had to do that because the doctors' opinions, Dr. Grodner and Dr. Rosenberg, were thrown out permissibly, and I can explain that. Dr. Grodner was one of the physicians who read the X-ray as positive. His determination was later backed up by another reader, Dr. Fox, and Dr. Fox's opinion was held in less regard because he was not a board-certified radiologist. That X-ray was ultimately found to be positive by the judge, not negative. But more importantly, Dr. Grodner, in his report, is asked five questions by Attorney Mattingly, and those five questions go to, does this man have a disabling pulmonary impairment and what is its connection to coal mine dust exposure or pneumoconiosis? And in all the questions, Dr. Grodner gives an answer that shows that he mistakes clinical pneumoconiosis with legal pneumoconiosis. Dr. Grodner's belief, and it's very clear from his report, is if you don't have the spots on the X-ray, you can't have any disability, any contribution from coal dust exposure.  And is there sufficient subjective evidence to justify a diagnosis of coal worker's pneumoconiosis? There is no evidence of coal worker's pneumoconiosis, says the doctor. The chest X-ray that was taken at this time and interpreted by myself and Dr. Fox does not indicate evidence of pneumoconiosis. So the second question, if so, in your opinion, did that condition arise in whole or in part from coal mine dust exposure? Not applicable since he does not have coal worker's pneumoconiosis. Two more times the doctor is asked, is there a contribution from coal dust? And both times he states it's not on the X-ray, he doesn't have any contribution from coal dust. Dr. Grodner ignores the entire premise of legal pneumoconiosis. His opinion is given less weight and in fact is thrown out for that reason, permissibly I might add. The other doctor, Dr. Rosenberg. Now Dr. Rosenberg has a theory and Judge Seiler, you stated that it seemed to be a condition that coal miners smoked and it seems that quite a few of them did have a heavy smoking history as well as a... They used to smoke even more when they could smoke in the mines. They should not. And if they don't smoke, they certainly chew. But nonetheless, Your Honor, in cases where there is a smoking history and coal dust exposure history, Dr. Rosenberg's opinion is often sought for one reason. Because though all the doctors in my 18 years of doing this have always said we can't really slice it up. We can't say this much from smoking, 23% from smoking and this much from coal dust. They can't do it. They say, no, I can give you a rough estimate. Dr. Rosenberg believes that he has found a way to slice that pie. And he does it by the ratio, the FEV1 slash FEC ratio. And what he says is that if that ratio is reduced, that's from smoking. If that ratio is preserved, that's from coal dust. The problem with the theory is not only is it against the Act, and in fact the preamble specifically talks about that, is that the medical definition of obstructive lung disease is a reduced ratio. So if you don't have a reduced ratio, you can't have obstructive lung disease. And that's exactly what the preamble and what the new part of the Act are saying, is that coal dust not only causes restrictive lung disease, it can cause obstructive lung disease. And COPD, miners' asthma, chronic bronchitis, that whole umbrella of diseases that now make up legal pneumoconiosis. And last but not least, there was a discussion in the brief about the smoking history. The coal miner admitted to smoking for 38 years. On average, about a pack and a half. He got a 58-year smoking history out of that. That's what he's reported on the stand. That's what was reported by several of the doctors. Now, that's not to say he never smoked more. There were times that he did, and there were times that he didn't. And in fact, that's what his testimony garnered, is that he talked about when he began, how little he smoked, to how much he smoked certain times when he worked in a cab, not underground, that he was able to smoke maybe two or three packs of cigarettes, and then ultimately quit smoking cigarettes. None of it matters. The BRB found that the smoking history was not well explained by the administrative logic, but it was harmless error. And it was harmless error because you didn't need to get to the smoking history. It's not necessary in this decision. This man met the presumption. And in summary, Your Honors, this appeal in part is nothing more than a request to reweigh the evidence, and that's impermissible. The administrative law judge has already done that. The administrative law judge permissibly discredited the opinions of Dr. Grodin, Dr. Rosenberg, and the issue regarding Dr. Diaz or the preamble or any of those things don't come to play. The presumption was met, and because the presumption was met, this minor should be awarded benefits. Thank you. Thank you. Good morning, Your Honors. My name is Sean Bukowski. I represent the Department of Labor's Office of Workers' Compensation Programs. Mr. Mattingly has made my presentation, I think, a bit easier. If I heard him correctly, the employer in this case has conceded that the Department of Labor's regulation governing the invocation of the 15-year presumption, which says that the minor needs to show that they were regularly exposed to coal mine dust for at least 15 years to trigger the presumption, is a reasonable interpretation of the Act. I heartily agree and urge the Court to uphold the Department's regulatory standard. Now, as far as applying the standard to this case, it's true that the ALJ didn't have the regulation before him when he wrote his decision. However, the ALJ concluded, I'm quoting from page 10 of the ALJ's decision, that the claimant's and Dr. Knight's testimony establishes that while the claimant was working in surface mine employment, he was exposed to a heavy amount of dust to include coal dust. Given that finding and the ALJ's determination that Mr. Sterling was a credible witness, I don't think there's any other conclusion that an ALJ could reach in this case other than to find that Mr. Sterling had successfully invoked the 15-year presumption. So I don't think that there needs to be a remand for the ALJ to make that foreordained conclusion. I would like to address a couple of the other issues Mr. Mattingly brought up. He did mention that he made a lot of this distinction between coal dust and coal mine dust. The regulation implementing the 15-year presumption says that you need to show 15 years of regular exposure to coal mine dust. I don't think that's a surprise to anyone in the black lung world. The definition of pneumoconiosis talks about any disease caused by dust exposure in coal mine employment. It's not specifically limited to diseases that are caused only by coal dust. It includes things like rock dust, any dust that's generated in the process of extracting or preparing coal. So rock dust would be part of that, you're saying? Yes. Coal mine dust, not coal dust. Yes, it's coal mine dust. And the 7th Circuit case, the Burris case by the 7th Circuit, explicitly talked about the miner having testified about exposure to coal and rock dust. And they found that sufficient to invoke the presumption. And as far as talking about dust being kicked up by the movement of machinery on roads, that's something that's been talked about in several of the invocation cases, including the 10th Circuit's recent Gooden decision. And finally, I'd like to address two last things that Mr. Mattingly discussed. He spent a good amount of time talking about the clinical pneumoconiosis diagnosis and the ALJ's evaluation of X-ray evidence. The Department, as we said in our brief, would like to remind the Court that that's not even necessary to consider that question because to rebut the presumption by showing that Mr. Sterling doesn't have pneumoconiosis, the employer has to show he doesn't have clinical pneumoconiosis or legal pneumoconiosis. So even if there was a mistake in the judge's analysis of clinical pneumoconiosis, the award should be affirmed so long as the judge's reasoning on legal pneumoconiosis is correct. And on that question of legal pneumoconiosis, Mr. Mattingly talked about Dr. Diaz's statement that Sterling wouldn't be totally disabled if he hadn't smoked. I think from which he draws the conclusion that the ALJ should have found that Mr. Sterling's, either his disease wasn't caused by dust or his disability wasn't caused by dust, but either way he's using an improper standard. To be compensable pneumoconiosis, all the disease that's caused by dust needs to do is materially worsen a disabling condition, even if that other disabling condition is caused by something other than dust. Similarly, for a disease to be considered pneumoconiosis, the disease doesn't need to be caused solely by dust. In fact, as long as it substantially aggravates another condition, then the dust disease is pneumoconiosis. So if your honors have no further questions, I would like to close by urging you to affirm the award of benefits to Mr. Sterling. Thank you. All right. Rebuttal. I agree the standard of review is whether substantial evidence supports the ALJ's findings. It doesn't in this case. The ALJ did not correctly find that the clinical treatment records could be used to rule out the existence of clinical pneumoconiosis. By making that error, he's erred in his weighing of all of the physician's opinions with regard to both clinical and legal pneumoconiosis. Dr. Diaz's opinion proves my case. Bottom line, when he says that this man would not have been totally disabled had he never smoked cigarettes, it shows that pneumoconiosis had no substantially contributing cause or material effect on this man's disabling lung disease. That's the standard that this circuit has put out for us to follow in the Ogle decision. It's the standard that Judge Gibbons, you found in the Callaway, Island Creek versus Callaway decision. There it was the flip side. The minor had the burden of proof to show that pneumoconiosis was a substantially contributing cause. Dr. Diaz's opinion, contrary to what the ALJ finds, establishes pneumoconiosis was not a substantially or material contributing cause to this man's disabling lung disease. Does that overturn the presumption? Yes. I think it does. The ALJ should not have thrown out Dr. Rosenberg's opinion for the reason that he did. Dr. Rosenberg's opinion, as I explained before, looks at a whole bunch of different things, not only the ratio, the FEV1 to FVC. Coincidentally, Dr. Diaz agreed with Dr. Rosenberg's assessment of the usefulness of that ratio in assessing cigarette smoke-induced lung disease. But there's nothing in the preamble that is contrary to how Dr. Rosenberg utilized the scientific data. In fact, the preamble page at 79943 says disabling impairment is defined by a lowering of the FEV1 percentage. And Dr. Rosenberg admits that COPD can be caused by coal dust exposure, but he says you have to look at everything presented. And that is what this court suggested in the Cornett v. Benham Coal Company case, where you have to look at everything that the physician considered when the ALJ is weighing the evidence. Here, the ALJ has failed to adequately weigh the evidence with regard to the existence of clinical or legal pneumoconiosis. But more importantly, the opinion of Dr. Diaz rebuts that presumption, supported by Dr. Rosenberg. And Dr. Grodner's opinion, while not the clearest or best-written opinion, is being tossed out because he said the COPD was due to smoking. The preamble says you can't do that. He separated clinical and legal pneumoconiosis, said there's no clinical because of the X-ray, no legal because I think the COPD is due to smoking. Thank you for your time this morning. Thank you, and the case is submitted. Let me call the next case.